UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IMAGE MEDIA ADVERTISING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 4513 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CITY OF CHICAGO, JUDY FRYDLAND, | ) | |
| Commissioner of the Department of Buildings for the | ) | |
| City of Chicago, and PATRICIA SCUDIERO, Zoning | ) | |
| Administrator for the City of Chicago, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Image Media Advertising, Inc. brought this suit under 42 U.S.C. § 1983 and Illinois law

against the City of Chicago and its Building Commissioner and Zoning Administrator

(collectively, the "City"), alleging that the denial of Image Media's permit applications for four

oversized billboards (called "signs" in municipal parlance) violated the First, Fifth and

Fourteenth Amendments and the Contracts Clause of the United States Constitution and their

analogs in the Illinois Constitution.  Doc. 1.  The City moves under Federal Rule of Civil

Procedure 12(b)(6) to dismiss the complaint.  Doc. 26.  The motion is granted in part and denied

in part.

**Background**

On a Rule 12(b)(6) motion, the court must accept the complaint's well-pleaded factual

allegations, with all reasonable inferences drawn in Image Media's favor, but not its legal

conclusions.  *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014).  The

court must also consider "documents attached to the complaint, documents that are critical to the

complaint and referred to in it, and information that is subject to proper judicial notice," along

with additional facts set forth in Image Media's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Image Media as those materials permit. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Image Media owns and operates billboards in the Chicago area. Doc. 1 at ¶ 1. No later than 2014, Image Media began to make preparations to construct billboards, each exceeding 100 square feet, at four locations in Chicago. *Id*. at ¶¶ 19, 47; Docs. 1-2, 1-5, 1-6, 1-10.

Applicants wishing to "maintain, erect, [or] install" certain billboards in Chicago must receive a permit from the City's Building Commissioner. Chicago Municipal Code ("MCC") § 13-20-550. An applicant for a sign exceeding 100 square feet or 24 feet in height, however, must obtain both a "normal [sign] permit" from the Building Commissioner and a "city council order approving [the] sign." MCC § 13-20-680. Moreover, before applying to the Building Commissioner, an applicant must "submit a duplicate of [its] application to the alderman of the ward in which the sign [was] to be located" and "submit to the city clerk an order for the approval or disapproval of the sign for introduction at the next regular meeting of the city council." *Ibid*. At the time Image Media submitted that applications at issue in this suit, the City had a "longstanding practice of deferring to the alderman of the ward in which a sign [was] proposed with respect to the approval of sign permit applications." Doc. 1 at ¶ 16.

The Municipal Code provides that the Building Commissioner "shall issue a permit for a sign [that exceeds 100 square feet or 24 feet in height] unless" the City Council issues an "order

disapproving the application" or the sign "for which the application is submitted is not or will not be in compliance with any provision of this chapter [Chapter 13-20, which sets forth, among other things, requirements for billboards]."  MCC § 13-20-680.  The Code further provides that "[t]he provisions of the Comprehensive Zoning Ordinances shall regulate the type and size and the permissibility of signs and their supporting structures."  MCC § 13-20-660.  While "the building commissioner may not take final action on [an] application until the city council issues or is deemed to issue an order to recommend approval or disapproval of the application," she "must take final action on the application no later than 75 days after the order for the sign permit was submitted to the city clerk."  MCC § 13-20-680.

Prior to commencing the application process for its four oversized billboards, Image Media entered into a lease agreement with Meade Electric Company to operate a billboard at 5401 West Harrison Street and an "Outdoor Advertising Sign Lease Agreement" with an unidentified non-party to operate a billboard at 3200 South Archer Avenue.  Doc. 1 at ¶¶ 19, 40.  Consistent with MCC § 13-20-680, Image Media submitted permit applications to the aldermen of the wards in which those properties are located and also submitted proposed approval ordinances to the City Council.  *Id*. at ¶¶ 20, 41.  In addition, Image Media submitted permit applications to the alderman of the ward encompassing two other properties on which it planned to install oversized billboards, 2100 North Elston Avenue and 2160 North Elston Avenue, and also submitted proposed approval ordinances to the City Council.  *Id*. at ¶ 28.

All four proposed ordinances received aldermanic approval, and all four were passed by the City Council.  *Id*. at ¶¶ 21-24, 29-31, 42-44.  The ordinances stated, in relevant part:

> Be it Ordained by the City Council of the City of Chicago:
>
> SECTION 1.  That the Commissioner of Buildings is hereby authorized and directed to issue a sign permit … for the erection of a sign/signboard over 24

> feet in height and/or over 100 square feet (in area of one face) at [the designated location] …
>
> Notwithstanding any provisions of Title 17 of the Municipal Code of the City of Chicago (the Chicago Zoning Ordinance) to the contrary, the Commissioner of Buildings is hereby directed and authorized to issue a sign permit to the address referenced within this ordinance.

*Id*. at ¶ 48; *see* Docs. 1-2, 1-5, 1-6, 1-10. The Chair of the City Council's Committee on Zoning, Landmarks & Building Standards then informed the Building Commissioner that ordinances approving permits for the four properties had been enacted. Doc. 1 at ¶¶ 24, 31, 44.

In reliance on its anticipated receipt of the permits, Image Media took certain actions and made certain expenditures. For the Harrison property, Image Media entered into a "First Amendment to Lease Agreement" with Meade Electric, which required Image Media to pay $10,000 to extend its lease payment commencement date, and which specified that if construction of a new billboard did not commence by April 1, 2017, Image Media would forfeit that money and Meade Electric would have "the right to cancel the lease unless Image Media began lease payments." *Id*. at ¶ 25. For the Archer property, Image Media's expenditures included "various fees and expenses to prepare for the erection of the sign." *Id*. at ¶ 45. And for the Elson properties, Image Media entered into a Purchase Agreement with Elston Development and Elston Signs to purchase two existing signs, the property on which they were located, and a "New Billboard Easement Area" permitting it to erect its oversized billboards. *Id*. at ¶ 32. The Purchase Agreement had an initial purchase price of $2 million, which Image Media paid on January 25, 2017. *Id*. at ¶ 36.

In late 2016, the Zoning Administrator informed Image Media that its applications were denied due to "other zoning ordinance restriction." *Id*. at ¶ 51. The Zoning Administrator advised Image Media that if it wished to appeal, it would have to request "'official' letters of denial from the Zoning Administrator." *Id*. at ¶ 51. The Zoning Administrator never provided

official letters, and the Building Commissioner, who "must take final action on [a sign permit application] … no later than 75 days after [a City Council] order for the sign permit [is] submitted to the city clerk," MCC § 13-20-680, failed to take action on Image Media's applications before the 75-day clock expired.  Doc. 1 at ¶ 51.

On or around April 19, 2017, the City Council ratified an amendment to MCC § 13-20-680.  *Id*. at ¶ 54.  The Amendment states:

> No member of the City Council or other municipal officer shall introduce, and no Committee of the City Council shall consider or recommend, any ordinance or order that is contrary in any way to any of the requirements of this section or Title 17 of the Code [the Chicago Zoning Ordinance].  No member of the City Council shall propose, and no Committee of the City Council shall consider, any amendment to an ordinance which, if passed, would render the ordinance contrary to any of the requirements of this section or Title 17 of the Code.  No member of the City Council may recommend action on, and no Committee of the City Council shall consider, any ordinance or order that authorizes the approval of a sign that does not comply with all applicable provisions of this section, Title 17 of the Code, and all other applicable Code provisions governing the construction and maintenance of outdoor signs, signboards, and structures.

*Id*. at ¶ 55; Doc. 1-13.  The practical effect of the Amendment is to bar the City Council from passing ordinances for oversized billboards that do not comply with all requirements of the newly amended § 13-20-680 and of the Chicago Zoning Ordinance.  That is, the Amendment bars the City Council from passing ordinances like Image Media's that directed the Building Commissioner to issue permits "[n]otwithstanding any provisions of … the Chicago Zoning Ordinance."  The Amendment also "repealed in their entirety" twenty ordinances, including the four Image Media ordinances referenced above, as well as "any other ordinance or order, authorizing a sign for which a permit has not issued, in contravention of [the Chicago Zoning Ordinance]."  Doc. 1-13 at 3-4.

The Building Commissioner then issued Notices of Sign Permit Denial for all four of Image Media's applications.  Doc. 1 at ¶ 57.  The Notices stated, in relevant part:

The sign permit application was reviewed by the Zoning Administrator and was denied on November 22, 2016 because the proposed sign is not allowed under the Chicago Zoning Ordinance. Section 13-20-660 of the MCC provides that the Zoning Ordinance shall regulate the type, size and the permissibility of signs and their supporting structures … .

Further, the sign permit application is not approved because the proposed sign does not have a city council order authorizing the sign as required under Section 13-20-680 of the MCC. Although [Image Media's ordinances were] passed [in Fall 2016] … [those ordinances are] no longer in effect. On April 19, 2017, Ordinance number O2017-3215 [the Amendment] was passed which repealed [those ordinances].

Doc. 1-14 at 1, 3, 5, 7.

## Discussion

Image Media alleges that the City violated the United States Constitution's Takings Clause, Due Process Clause, Equal Protection Clause, First Amendment, and Contracts Clause, as well as their analogs in the Illinois Constitution. The City argues that analysis under both constitutions is the same for purposes of this case, Doc. 31 at 11 n.1, 18 n.6, 20 n.7, 22 n.10, 25 n.11, and Image Media does not disagree, thereby forfeiting on this motion any argument that the Illinois Constitution provides any greater rights as to its claims than does the United States Constitution. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss.").

## I. Takings Clause

 "The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not 'be taken for public use, without just compensation.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005). Image Media alleges that the City violated the Takings Clause by depriving it without just compensation of its "leasehold, ownership and easement interests in the four properties and two existing signs," its "vested property rights to erect and operate the signs," and the sign permits themselves. Doc. 1

at ¶ 62; Doc. 39 at 10.  The parties dispute both whether Image Media has asserted the kind of property interests compensable under the Takings Clause and, if so, whether that property actually has been taken.

A.    **Whether Image Media Has Sufficiently Alleged Protected Property Interests**

Whether a plaintiff has a constitutionally protected private property interest under the Takings Clause turns on "existing rules or understandings that stem from an independent source such as state law."  *Daniels v. Area Plan Comm'n of Allen Cnty.*, 306 F.3d 445, 459 (7th Cir. 2002).  Image Media submits that it has three such interests: (1) a property right arising from its "status as owner and lessee of the four properties" where it wishes to erect the oversized billboards, as well as its ownership of "existing signs and rights to billboard easements"; (2) a property right in the sign permits themselves; and (3) a property right created by "virtue of [Image Media's] change in position, expenditures and incurrence of obligations" in anticipation of receiving the permits.  Doc. 39 at 10-14.  The City concedes that the first of those interests is protected under the Takings Clause.  Doc. 31 at 14.  However, the City contends that Image Media lacks a protected property interest for Takings Clause purposes in the sign permits themselves and that the investments Image Media made in anticipation of receiving the permits do not give rise to a compensable property right.  *Id*. at 12-14.  The City is correct.

As to the sign permits themselves, Image Media relies heavily on decisions where the plaintiff successfully asserted that a permit or license was protected property under the Due Process Clause.  Doc. 39 at 10-12.  True enough, those decisions hold that permits and licenses can constitute protected property interests for due process purposes.  *See*, *e.g.*, *Barry v. Barchi*, 443 U.S. 55, 64 (1979) ("As a threshold matter, therefore, it is clear that Barchi had a property interest in his license sufficient to invoke the protection of the Due Process Clause."); *Pro's*

*Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009) ("Once granted, an Illinois liquor license is a form of property within the meaning of the due process clause."); *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989) (addressing whether a liquor license or occupancy permit constituted a property interest for due process purposes); *Reed v. Vill. of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983) (holding the plaintiffs' interest in the renewal of a liquor license to be a property right for due process purposes), *overruled on other grounds by Brunson v. Murray*, 843 F.3d 698 (7th Cir. 2016); *3883 Conn. LLC v. D.C.*, 336 F.3d 1068, 1073 (D.C. Cir. 2003) (holding that the plaintiff had a "property interest in the continued effect of … [certain] permits" for due process purposes); *Martell v. Mauzy*, 511 F. Supp. 729, 738-39 (N.D. Ill. 1981) (holding that the plaintiffs had a protected property interest in an operating permit for due process purposes).

Those decisions do not win the day for Image Media, however, for "'[p]roperty' as used in [the Takings] clause is defined much more narrowly than in the due process clauses." *Pittman v. Chi. Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir. 1995); *see Pro-Eco, Inc. v. Bd. of Comm'rs of Jay Cnty.*, 57 F.3d 505, 513 (7th Cir. 1995) ("The Due Process Clause … recognizes a wider range of interests as property than does the Takings Clause."). Courts addressing the matter generally hold that permits and licenses may be property under the Due Process Clause but not under the Takings Clause. *See Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1197 (10th Cir. 1999) ("[T]he fact that a grazing permit is not 'property' under the Takings Clause does not prevent the same permit (or its terms and conditions) from constituting 'property' under the Fifth Amendment Due Process Clause."), *abrogated on other grounds by Onyx Props. LLC v. Bd. of Comm'rs of Elbert Cnty.*, 838 F.3d 1039 (10th Cir. 2016); *Am. Pelagic Fishing Co., L.P. v. United States*, 49 Fed. Cl. 36, 46 (2001) ("Licenses or permits

8

are traditionally treated as not protected by the Takings Clause because they are created by the government and can be cancelled by the government and normally are not transferrable."), *rev'd on other grounds*, 379 F.3d 1363 (Fed. Cir. 2004); *Jesso v. Podgorski*, 2010 WL 5157361, at *4 (N.D. Ill. Dec. 14, 2010) ("Plaintiffs have offered no authority, and the Court has found none, to support Plaintiffs' argument that their liquor license is considered private property within the meaning of the Takings Clause of the Fifth Amendment."). And even though some decisions might be read to hold otherwise with respect to permits or licenses that have already been granted, *see Wheeler v. City of Pleasant Grove*, 664 F.2d 99, 100 (5th Cir. 1981), the court is aware of no decision holding that the plaintiff has a protected property interest for takings purposes in a permit or license that has not yet issued. *See Scott v. Greenville Cnty.*, 716 F.2d 1409, 1421-22 (4th Cir. 1983) ("Although we view Scott as having held an entitlement to permit issuance which was sufficiently a 'species of property' to require constitutional protection [under the Due Process Clause], the permit, until it is at least actually in hand, is not in the nature of interests the deprivation of which is encompassed by the Fifth Amendment 'takings' doctrine.").

With two exceptions, the cases cited by Image Media do not suggest that even the *revocation* of a license or permit already possessed by the plaintiff could ground a takings claim. The first, *Boonstra v. City of Chicago*, 574 N.E.2d 689 (Ill. App. 1991), addressed the impact of an ordinance retroactively revoking the assignability of taxicab licenses. In holding that the plaintiff had a property interest for takings purposes in the assignability of a taxicab license, *Boonstra* explained that "for more than 20 years, the City of Chicago … fostered and participated in the assignment of the taxicab licenses," rendering them "more than just mere personal permits granted by a governmental body to a person to pursue some occupation or to carry on some business," but rather imbuing them in "a functional sense" with "the essence of

property in that they were securely and durably owned and marketable." *Id*. at 694-95. *Boonstra* thus involved a situation where the plaintiff "already [had] an assignable property interest in taxicab licenses" and then was precluded "from being able to assign th[at] interest." *Id*. at 695. The second case, *Pittsfield Development, LLC v. City of Chicago*, 2017 WL 5891223 (N.D. Ill. Nov. 28, 2017), which held that the plaintiff had a protected property interest in a permit that was "effectively revoke[ed]" three months later, likewise addressed a situation where the plaintiff's "valid Permit had issued." *Id*. at *1-2, *8. Here, by contrast, Image Media never received its permits, and thus it had no protected property interest in them for takings purposes, even under *Boonstra* and *Pittsfield*.

Nor does Image Media have a protected property interest for Takings Clause purposes by virtue of the investments it made in the expectation of receiving the permits. As noted, the existence of a protected property interest is determined by state law, and this is what the Supreme Court of Illinois has to say about the property rights that arise due to investments made in reliance on the expectation of receiving a permit:

> [W]here there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance, such party has a vested property right and he may complete the construction and use of the premises for the purposes originally authorized, irrespective of subsequent zoning or a chance in zoning classification.

*People ex rel. Skokie Town House Builders, Inc. v. Vill. of Morton Grove*, 157 N.E.2d 33, 37 (Ill. 1959). The City argues that even if Image Media acquired a "vested property right" due to its expenditures in anticipation of receiving the sign permits, that right "does not give rise to a property interest compensable as a taking[]." Doc. 31 at 13. Image Media responds that it "makes no sense either as a matter of logic or the English language" that the "vested property

10

right" recognized in *Skokie Town House Builders* could be "somehow different from—and lesser than—a 'property interest' compensable as a taking." Doc. 39 at 13.

Again, the City is correct. Illinois precedent reveals the "vested property right" doctrine to have a narrow scope. When first embracing the doctrine in *Fifteen Fifty North State Bldg. Corp. v. City of Chicago*, 155 N.E.2d 97 (Ill. 1958), the Supreme Court of Illinois explained:

> The general rule in Illinois concerning the retroactive effect of zoning ordinances is stated in *Deer Park Civic Ass'n v. City of Chicago*, 106 N.E.2d 823 (Ill. App. 1952), … where the court held that any substantial change in position, expenditures, or incurrence of obligations occurring under a building permit or in reliance upon the probability of its issuance is sufficient to *create a right in the permittee and entitles him to complete the construction and use the premises for the purposes originally authorized* irrespective of a subsequent zoning or change in zoning classification.

*Id*. at 101 (emphasis added); *see also 1350 Lake Shore Assocs. v. Healey*, 861 N.E.2d 944, 950 (Ill. 2008) (noting that the Supreme Court of Illinois adopted the vested rights doctrine in *Fifteen Fifty North State*).

As *Fifteen Fifty North State* describes the doctrine, the right possessed by an individual with a vested interest is the right to "complete the construction and use of the premises for the purposes originally authorized." 155 N.E.2d at 101; *accord Skokie Town House Builders*, 157 N.E.2d at 37. Consistent with this understanding, every "vested property" case cited by Image Media, and every case of which the court otherwise is aware, identifies a "writ of mandamus"— an order permitting property owner to proceed with construction or use—as the appropriate remedy for interference with the vested property right. *See Pioneer Trust & Sav. Bank v. Cook Cnty.*, 377 N.E.2d 21, 22, 27 (Ill. 1978) (holding that the plaintiff had a vested property right in a zoning classification, and affirming the trial court's mandamus order requiring the county to issue a zoning certificate and building permit); *Skokie Town House Builders*, 157 N.E.2d at 37-38 (holding that the plaintiff had a vested property right in a zoning ordinance, "which would entitle it to

complete the construction of [certain] town houses," and affirming trial court's mandamus order to that effect); *Cribbin v. City of Chicago*, 893 N.E. 2d 1016, 1020 (Ill. App. 2008) (affirming the trial court's holding that the plaintiffs had a vested right in a zoning classification and its mandamus order requiring the City to issue building permits based on that classification after the plaintiffs' property was rezoned); *O'Connell Home Builders, Inc. v. City of Chicago*, 425 N.E.2d 1339, 1344 (Ill. App. 1981) (affirming the trial court's mandamus order, reasoning that a "right was created in the plaintiffs to use the subject property for the purposes authorized by the zoning ordinance [due to its substantial investments] that existed at the time [its] permit application was submitted to the department of buildings of the city of Chicago," notwithstanding a subsequent zoning ordinance prohibiting construction of the plaintiffs' proposed building); *Sgro v. Howarth*, 203 N.E.2d 173, 177 (Ill. App. 1964) ("It appears to be now well established in this state that where there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance such party has a vested property right and he may complete the construction and use of the premises for the purposes originally authorized irrespective of subsequent zoning or a change in zoning classification.").  None of Image Media's cases, however, suggest that a plaintiff could premise a takings claim on such a vested property right. This stands to reason, as a takings claim is intended to compensate with money an individual whose property rights are impacted by government action, while the "vested property right" doctrine provides injunctive relief actually allowing the plaintiff to use the property as he or she wishes, overriding the government's effort to halt such use.  As such, any vested property right that Image Media acquired in reliance on its receipt of the sign permits does not give rise to a constitutionally protected property right for the purposes of the Takings Clause.

**B.**      **Whether Image Media's Property Has Been Taken by the City**

Image Media alleges not a physical taking, but a regulatory taking of its leasehold, ownership, and easement interests in the four properties.  The Supreme Court has set forth "two guidelines … for determining when government regulation is so onerous that it constitutes a taking." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017).  "First, with certain qualifications … a regulation which denies all economically beneficial or productive use of land will require compensation under the Takings Clause.  Second, when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on a complex of factors [articulated in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978)], including: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action."  *Ibid.* (internal quotation marks and citations omitted).  The first is called a "total regulatory taking," *Lingle*, 544 U.S. at 538, while the second is called a "partial regulatory taking," *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1074 (7th Cir. 2013).

The City argues that Image Media's regulatory takings claim fails because its complaint does not describe the economic impact that the City's actions had on its property interests.  Doc. 31 at 15-17.  That argument is incorrect, as facts alleged in the complaint and in Image Media's brief opposing dismissal—which the court may properly consider on a Rule 12(b)(6) motion, *see Phillips*, 714 F.3d at 1020—give rise to a permissible inference that Image Media suffered some form of economic harm, up to and including the deprivation of all beneficial uses of the properties.  For example, Image Media alleges that its lease agreement for the Harrison property allows only for the erection and operation of a billboard; that there is "nothing" for which the

Archer property can "be used" if it "cannot be used for a sign"; and that "absolutely no economic benefit … can be derived" from the New Billboard Easement Area at the Elston properties "if no signs are allowed." Doc. 39 at 14-15; *see* Doc. 1 at ¶¶ 19, 32-35, 40. These alleged facts suffice to establish not only that Image Media suffered economic harm due to the City's actions, but that at least some of its property interests have been rendered essentially worthless. Because Image Media has alleged the deprivation of all economically beneficial use of at least some of its properties, it has stated a "total regulatory takings" claim. *See Lingle*, 544 U.S. at 538 ("[T]he government must pay just compensation for … [a] 'total regulatory takings'" where a regulation "completely deprive[s] an owner of *all* economically beneficial use of her property") (internal quotation marks omitted); *Muscarello v. Winnebago Cnty. Bd.*, 702 F.3d 909, 913 (7th Cir. 2012) (noting that "the enforcement of a regulation that renders the property essentially worthless to its owner" constitutes a taking).

The City next argues that Image Media has failed to adequately plead a partial regulatory takings claim because the denial of Image Media's permits did not involve a "physical invasion or appropriation of property" and because the highly regulated nature of the "business of selling advertising on outdoor signs" should have led Image Media to "reasonably expect a regulation to interfere with its investment." Doc. 31 at 16-17. The City may ultimately prevail on this argument once an evidentiary record is developed, but dismissal is inappropriate at this stage due to the significant economic harms alleged by Image Media, which at the pleadings stage reasonably could tip the *Penn Central* analysis in its favor.

Accordingly, Image Media may proceed with a regulatory takings claim due to the impact of the City's actions on its property interests at the four properties.

II.    **Due Process Clause**

The complaint alleges, in a count labeled "Substantive Due Process," that the City "acted in an arbitrary and capricious manner not rationally related to any legitimate government interest" in these four ways: (1) the Zoning Administrator's unofficial denial of Image Media's sign permits after the City Council enacted the four sign permit ordinances; (2) the Building Commissioner's failure to take final action on Image Media's permit applications within the time required by MCC § 13-20-680; (3) the City Council's repeal via the Amendment of Image Media's four ordinances; and (4) the Building Commissioner's denial of Image Media's permit applications based on the Amendment.  Doc. 1 at ¶¶ 66-69.  The City's motion addresses only the third action and, by implication, the fourth.  Doc. 31 at 18-20.  Even if the City's reply brief could be generously read to address the first and second actions, Doc. 50 at 8, arguments raised for the first time in a reply brief are forfeited.  *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003) ("Because Volvo raised the applicability of the Maine statute in its reply brief, the district court was entitled to find that Volvo waived the issue.").  Accordingly, Image Media's substantive due process claim arising from the first and second actions survive dismissal, and the court will address only the third (and, by implication, the fourth): the City Council's passage of the Amendment.

"[S]ubstantive due process is not a blanket protection against unjustifiable interferences with property" and does not "confer on federal courts a license to act as zoning boards of appeals."  *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008).  Rather, substantive due process is "a modest limitation that prohibits government action only

when it is random and irrational." *Id*. at 1000-01; *see also Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th Cir. 2005) (noting that substantive due process "is very limited and protects plaintiffs only against arbitrary government action that shocks the conscience") (internal quotation marks omitted).

The City argues that the Amendment, far from being arbitrary or irrational, was designed to "ensure compliance with the City's zoning laws" by ending the City Council's practice of providing exemptions from the Municipal Code's zoning rules on a case-by-case basis driven by a single alderman. Doc. 31 at 19-20. That purpose is set forth in the Amendment's preamble, which notes that "[s]everal recent City Council ordinances have been phrased to direct the Commissioner of Buildings to issue a permit even where the particular sign violated the Municipal Code's applicable standards"; that "[s]uch a practice undermines the integrity and cohesiveness of the City of Chicago's building and zoning code," which relies on "cohesive sensible categories as well as general restrictions on the placement, size, and use of structures in order to promote public health, safety and welfare"; that "[a] central goal of the zoning ordinance is the maintenance of orderly and compatible land use development patterns upon which residents and businesses can rely"; and that "[a]mending Section 13-20-680 to restrict City Council actions that allow signs to override the City of Chicago's zoning and building code would allow for a consistent process and a standard that promotes public health, safety, and welfare." Doc. 1-13 at 3.

That seems rational enough, but Image Media asserts that the "rational basis [inquiry] involves questions of fact that are inappropriate for a motion to dismiss." Doc. 39 at 18. That argument fails. "The Seventh Circuit has often affirmed the dismissal of complaints [that allege arbitrary actions in the context of a substantive due process claim] for a failure to state a claim."

*Reimer v. Shelby Cnty.*, 2007 WL 3224148, at *2 (C.D. Ill. Oct. 29, 2007); *see*, *e.g.*, *CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 488 (7th Cir. 2014); *Estate of Himelstein v. City of Fort Wayne*, 898 F.2d 573, 577 (7th Cir. 1990). Dismissal is appropriate here, as the Amendment itself sets forth in its preamble an eminently rational justification for its passage: The City Council recognized that by approving oversized billboards, at a single alderman's insistence, that violated otherwise applicable zoning restrictions, it had undermined the zoning law's integrity, and the Council decided to address the problem by ending that practice and repealing sign approval ordinances that had been enacted under the prior regime. That rationale—bringing order to chaos by reining in the power of individual aldermen to effectively override generally applicable limits on oversized billboards—more than satisfies rational basis review. *See Pro-Eco, Inc.*, 57 F.3d at 514 (holding that an ordinance barring construction of a landfill after the plaintiff purchased land with the intent of opening a landfill did not violate substantive due process because the ordinance was intended to prevent the risk of serious environmental damage and to protect "the public health, safety, or welfare of the citizens of Jay County"); *C-Energy-Glenmore Wind Farm No. 1, LLC*, 769 F.3d at 488 (holding that the "decision to delay action on CEnergy's building permit requests" to develop a windfarm was not arbitrary because "popular opposition to a proposed land development plan is a rational and legitimate reason for a legislature to delay making a decision").

This result would hold even if the court doubted that the preamble truthfully set forth the Amendment's actual purpose, as "governmental action passes [the substantive due process] rational basis test if a sound reason may be hypothesized" for the action. *Pro-Eco, Inc.*, 57 F.3d at 514. Here, the City has, at the very least, hypothesized a legitimate rationale for the Amendment—bringing uniformity and order to what had been a disorderly and decentralized

17

oversized billboard permitting regime. That rationale is the quintessence of soundness and rationality. *See Greater Chi. Combine & Center, Inc. v. City of Chicago*, 431 F.3d 1065, 1071-72 (7th Cir. 2005) (holding that an ordinance barring the "keeping of pigeons" did not violate the substantive due process rights of an organization that raised and bred homing pigeons where the city asserted that the "pigeon prohibition" was intended to "limit[] interference with neighbors' enjoyment of their property" and to address "public health concerns," which the court found to be "at least hypothetically rational justifications for banning pigeons in residential areas").

To sum up, Image Media's substantive due process claim is dismissed insofar as it stems from the Amendment's passage, but (due to the City's forfeiture) it otherwise may proceed.

## III. Equal Protection Clause

The complaint alleges that the City "arbitrarily denied Image Media's permits" in violation of the Equal Protection Clause. Doc. 1 at ¶¶ 79-84. The parties agree that Image Media's equal protection claim is a "class-of-one" claim. Doc. 31 at 25; Doc. 39 at 24. Unlike a traditional equal protection claim, which alleges that the plaintiffs "have been arbitrarily classified as members of an identifiable group," a class-of-one claim "asserts that an individual has been irrationally singled out, without regard for any group affiliation, for discriminatory treatment." *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (internal quotation marks omitted). To "state a class-of-one equal protection claim, an individual must allege that he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013) (internal quotation marks omitted).

The City argues that Image Media has not identified a "similarly situated" entity that received better treatment. Doc. 31 at 26. Although "[w]hether a comparator is similarly situated

is usually a question for the fact-finder … dismissal at the pleading stage [is] appropriate" if the plaintiff fails "to allege facts tending to show that it was similarly situated to any of the comparators." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010). Simply "saying the magic words ['similarly situated'] is not enough: [a plaintiff] must offer further factual enhancement" to forestall dismissal. *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 775 (7th Cir. 2013) (internal quotation marks omitted).

Image Media has not cleared this hurdle. The complaint alleges that on December 9, 2014 and April 18, 2012, the City issued permits to "similarly situated sign operators" based on "similar City Council ordinance[s]." Doc. 1 at ¶¶ 82-84. Those two permits were issued years before Image Media applied for its permits; more significantly, Image Media nowhere suggests that the signs authorized by those two permits failed to otherwise comply with the City's zoning requirements—a potentially crucial distinction given that the Zoning Administrator and Building Commissioner identified Image Media's signs' failure to comply with zoning law as a basis for denying its permit applications. Doc. 1-14 at 1, 3, 5, 7; *see* Doc. 1 at ¶ 57. Because Image Media has failed to adequately identify a similarly situated comparator, its class-of-one equal protection claim fails. *See LaBella Winnetka, Inc.*, 628 F.3d at 942 (holding that that the plaintiff, which was denied the right to partition off a portion of its restaurant after a fire and to reopen the undamaged area, was not "similarly situated" for purposes of a class-of-one claim to a comparator that was allowed to remain open for business while a "portion of the restaurant was partitioned-off for building repairs," reasoning that the complaint did not specify the nature of the comparator's repairs and that "[t]he extent of the work to be done behind a partition certainly is material to the determination of whether such a partition is feasible").

## IV.     First Amendment

The complaint alleges that the Amendment is facially invalid under the First Amendment because it "contains an overbroad ban on the political speech of [Image Media] and all other actual and potential sign owners and elected officials by prohibiting City Council members and other municipal officers from introducing, recommending or proposing laws based on the content of the laws," and also because it "restrict[s] City Council Members and other municipal officers from even *considering* ordinances that would amend the current zoning restrictions on signs," thereby "interfer[ing] with Image Media's right to petition City Council Members for redress."  Doc. 1 at ¶ 74.  The First Amendment claim, then, seeks to vindicate the rights not only of Image Media and other billboard applicants, but also of City Council members.

Image Media cannot proceed with the claim insofar as it rests on the alleged violation of the free speech rights of City Council members.  True enough, in the "First Amendment overbreadth area, courts have taken a more liberal approach … to the ability of one private party to assert the rights of another party."  *United States v. Holm*, 326 F.3d 872, 875 (7th Cir. 2003).  But that approach typically is taken "only where the court is convinced that the party whose rights are most clearly implicated may not be in a position to assert those rights effectively."  *Ibid.*; *see also Massey v. Wheeler*, 221 F.3d 1030, 1035 (7th Cir. 2000).  There is no such danger here.  Members of the City Council—the very individuals who passed the Amendment—have the unfettered ability to challenge it in court if they believe it infringes their free speech rights; better yet, they can vote to alter or repeal the Amendment.  It follows that Image Media cannot pursue its overbreadth challenge based on the City Council members' free speech rights.  *See Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 191 n.5 (2007) ("Nor is it clear that the 'strong medicine' of the overbreadth doctrine is even available to challenge a statute … [where it] may

be argued that the only other targets of the statute's narrow prohibition … are sufficiently capable of defending their own interests in court that they will not be significantly 'chilled.'").

The First Amendment claim fares no better in asserting the rights of Image Media and other billboard applicants to petition the government to redress their grievances. "The Petition Clause of the First Amendment … is an assurance of a particular freedom of expression … [and] is designed to guarantee that persons may communicate their will through direct petitions to the legislature and government officials." *Wright v. DeArmond*, 977 F.2d 339, 345-46 (7th Cir. 1992) (internal quotation marks omitted). Significantly, the clause provides "merely a right to petition the appropriate government entity," not a right to have the government "grant the petition, no matter how meritorious it is." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1006-07 (7th Cir. 2000).

The Amendment does not prohibit Image Media from petitioning City Council members for permits that do not comply with the Zoning Code; rather, it simply affects such a petition's likely effectiveness. Moreover, Image Media may petition the City Council to amend the Zoning Code or repeal the Amendment. It follows that the Amendment does not violate Image Media's rights under the Petition Clause. *See Smith v. Ark. State Highway Empl., Local 1315*, 441 U.S. 463, 465 (1979) ("The public employee surely can … speak freely and petition openly … . But the First Amendment does not impose any affirmative obligation on the government to listen [or] to respond."); *Laborers Local 236, AFL-CIO v. Walker*, 749 F.3d 628, 634-635 (7th Cir. 2014) (holding that a law prohibiting government employees from engaging in collective bargaining with their general employees did not violate the Petition Clause because "general employees remain[ed] free to associate … and their unions remain[ed] free to speak; municipal employers [we]re simply not allowed to listen").

## V.    Contracts Clause

The complaint alleges that Image Media "had existing contracts concerning the erection and operation" of the four oversized billboards—namely, its contracts to lease property at the Harrison and Archer properties and to purchase two signs, the property on which those signs would be located, and a New Billboard Easement Area at the Elston properties—and that "[t]he Amendment operates as a substantial and unreasonable impairment of those existing contractual relationships in violation of the Contracts Clause[] … ."  Doc. 1 at ¶¶ 76-77 (citing *id*. at ¶¶ 25-26, 32-38, 40-45).  Contracts Clause challenges are governed by "a two-step analysis, asking first whether a change in state law has substantially impaired a contractual relationship, and second whether the impairment is reasonable and necessary for a legitimate public purpose."  *Elliott v. Bd. of Sch. Trs. of Madison Consol. Schs.*, __ F.3d __, 2017 WL 5988226, at *4 (7th Cir. Dec. 4, 2017); *see also Chi. Bd. of Realtors, Inc. v. City of Chicago*, 819 F.2d 732, 736 (7th Cir. 1987).

To satisfy the first step, the plaintiff must "show (1) that there is a contractual relationship, (2) that a change in law has impaired that relationship, and (3) that the impairment is substantial."  *Gary Jet Center, Inc. v. AFCO AvPORTS Mgmt. LLC*, 868 F.3d 718, 721 (7th Cir. 2017) (internal quotation marks omitted).   The City argues that Image Media cannot clear this hurdle because it has not adequately alleged that the Amendment impaired any of its contractual relationships.  Doc. 31 at 23-24.  For much the same reasons given above in discussing the regulatory takings claim, Image Media has adequately alleged that it entered into contracts in anticipation of receiving the sign permits and that the Amendment economically impacted those relationships.

The City argues in the alternative that any impairment of those contractual relationships was not substantial.  When determining whether an impairment is substantial, the central issue is

"whether the impairment disrupts reasonable contractual expectations."  *Elliott*, 2017 WL

5988226, at *6.  The Seventh Circuit has "br[oken] this inquiry into two questions," with the first

being whether "the impaired [contractual] term [was] a 'central undertaking' of the bargain such

that it 'substantially induced' [the impacted party] to enter [its] contracts."  *Ibid*.  Based on the

allegations in Image Media's complaint and brief, the answer to this question is yes.  Image

Media has plausibly alleged that it entered into various contracts largely or solely in order to

install the four oversized billboards, and that the Amendment precluded it from doing so.

The second question pertaining to whether an impairment is substantial asks whether "the

change in law [was] foreseeable, meaning [whether] the risk of change was reflected in the

original contract."  *Ibid*.  When examining that question, the court "must consider whether the

industry in which the complaining party is engaged has been regulated in the past, because a

history of regulation bears on the parties' expectations at the time of contracting."  *Kendall-*

*Jackson Winery, Ltd. v. Branson*, 82 F. Supp. 2d 844, 873 (N.D. Ill. 2000); *see Elliott*, 2017 WL

5988226, at *7 (noting that the Supreme Court has "found that a change in law was foreseeable"

where there was a "history of extensive and intrusive regulation in the affected industry").  A

"history of regulation is never a sufficient condition for rejecting a challenge based on the

contracts clause."  *Chrysler Corp. v. Kolosso Auto Sales, Inc.*, 148 F.3d 892, 895 (7th Cir. 1998).

That said, where the challenged regulation "was in the direct path of the plausible (though of

course not inevitable) evolution of [municipal policy]" and "constituted only a small and

predictable step along that path," there likely was no substantial impairment.  *Ibid*.; *see Chi. Bd.*

*of Realtors*, 819 F.2d at 735-36 (noting that the "level of scrutiny given [a] law [under the

Contracts Clause] varies inversely in accordance with the degree of prior regulation in a

particular field of activity"); *Peoria Tazewell Pathology Grp., S.C. v. Messmore*, 2011 WL

4498937, at \*6 (N.D. Ill. Sept. 23, 2011) (holding that where the challenged law "merely took …

one step further by providing for mandatory arbitration," any impairment to contractual

relationships was not substantial because the law represented "incremental legislation in the

heavily regulated insurance industry").  The "retroactive application" of a law to impair existing

contract rights may bear on the question whether a change in the law was foreseeable.  *Elliott*,

2017 WL 5988226, at \*7.

The City argues that the elimination of its practice of granting individual exemptions

from the Zoning Code for oversized billboards constitutes just a "small and predictable step"

forward in its practice of regulating outdoor advertisement signs.  Given the detailed and

restrictive regulatory regime governing billboards, the City is correct, and there accordingly was

no substantial impairment of Image Media's contractual relationships for Contracts Clause

purposes.  *See Alliance of Auto. Mfrs. v. Gwadosky*, 430 F.3d 30, 42 (1st Cir. 2005) (holding that

where the State had implemented a law "dictat[ing] the price of warranty repairs," an amendment

that "required that [a motor vehicle] manufacturer, rather than the dealer or the consumer, absorb

the true cost of those repairs" was a "foreseeable addition," thereby defeating a claim that the

amendment "substantially impair[ed]" the plaintiff automobile manufacturers' contractual

relationships); *see also Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 438-39

(8th Cir. 2007) (reasoning that because gambling in Iowa was permissible "only if authorized by

a specific statutory exception" and thus existed "at the sufferance of the Legislature," and

because state authority to regulate gambling is well-established, gambling constituted a heavily

regulated industry for the purposes of analysis under the Contracts Clause).

In so holding, the court recognizes *Elliott*'s suggestion that a law's retroactive effect

could render the law unforeseeable in certain circumstances.  Specifically, *Elliott* held that the

24

application of layoff provisions to already-tenured teachers was unforeseeable because it worked a "change in the fundamental trade-off of job security for money" for teachers who had "built their entire careers relying on" tenure.  2017 WL 5988226, at *7.  Nonetheless, the Seventh Circuit took care to distinguish the tenure situation from a law upheld by the Supreme Court in which "new price controls on natural gas" were held not to disrupt a "supplier's reasonable expectations."  *Ibid.* (citing *Energy Reserves Grp. v. Kan. Power & Light Co.*, 459 U.S. 400 (1983)).  The Amendment is far more akin to a law altering price controls than the law diminishing the decades-old rights of tenured teachers in layoffs in *Elliott*.

In any event, even if the Amendment substantially impaired Image Media's contractual relationships, its claim would founder at the second step of the Contracts Clause analysis because the Amendment was "reasonable and necessary to meet an important social problem."  *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 885 n.4 (7th Cir. 2012) (internal quotation marks omitted); *see Elliott*, 2017 WL 5988226, at *8 ("[N]ot even all substantial impairments of contracts are unconstitutional.  If the impairment is both reasonable and necessary for an important public purpose, then the law does not violate the Contract[s] Clause.").  Where, as here, "the state or its agent is not a party to the contract impaired by the challenged law, the court's scrutiny [of whether the government entity had a significant and legitimate purpose for the law] is relaxed."  *Chi. Bd. of Realtors, Inc.*, 819 F.2d at 737.  In such situations, "the court must defer to the legislators' judgment and ask whether they 'rationally could have believed [the ordinance] would lead to improved public health and welfare.'"  *Mo. Pet Breeders Ass'n v. Cnty. of Cook*, 106 F. Supp. 3d 908, 924-25 (N.D. Ill. 2015) (quoting *Chi. Bd. of Realtors, Inc.*, 819 F.2d at 737).  As explained above when discussing Image Media's substantive due process claim, the City has advanced a rational—indeed,

compelling—basis for concluding that the Amendment advances the public welfare, thus satisfying the second part of the Contracts Clause analysis. *See Chi. Bd. of Realtors, Inc.*, 819 F.2d at 734, 737 (holding that the plaintiff landlords did not show a reasonable probability of success on their Contracts Clause claim where the challenged ordinance required them to "maintain dwelling units in compliance with all applicable municipal code provisions" and provided various rules governing the landlord-tenant relationship, reasoning that the ordinance represented a "rational allocation of rights and responsibilities between landlords and tenants" that the "city rationally could have believed would lead to improved public health and welfare").

For these reasons, Image Media's Contracts Clause claim is dismissed.

## VI.    Miscellaneous Issues

A separate count of the complaint seeks under Illinois law a writ of mandamus directing the City to issue the four permits to Image Media. Doc. 1 at ¶¶ 85-93. The City seeks dismissal of this count on the ground that Image Media's request for mandamus relief fails to comply with Illinois precedent. Doc. 31 at 27-28. There is no need to resolve this issue on the pleadings given that the mandamus count seeks equitable relief from the court and also that litigating the count likely will entail no discovery beyond the discovery otherwise arising from the surviving takings and due process claims. The City may renew its arguments against mandamus relief if and when Image Media actually moves the court for such relief.

The City argues that the Building Commissioner (Judy Frydland) and the Zoning Administrator (Patricia Scudiero) should be dismissed because they have been named only in their official capacities, rendering any claims against them duplicative of Image Media's claims against the City. *See Walker v. Sheahan,* 526 F.3d 973, 977 (7th Cir. 2008) ("Actions against individual defendants in their official capacities are treated as suits brought against the

26

government entity itself."). As Image Media notes, however, the complaint sues the pair in their individual capacities as well and alleges that they "caused or participated in [some of the] alleged constitutional deprivation[s]." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). Frydland and Scudiero will remain in the case.

## Conclusion

The City's motion to dismiss is granted in part and denied in part. Image Media's takings claim arising from the sign permits themselves and from the "vested property rights" doctrine, substantive due process claim arising from the Amendment's passage, equal protection claim, First Amendment claim, and Contracts Clause claim are dismissed. The dismissal is without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). In all other respects, the City's motion is denied. If Image Media wishes to replead the dismissed claims, it may file an amended complaint by January 10, 2018. If Image Media does not amend its complaint, the City's answer, Doc. 34, shall stand as to the surviving portions of the complaint. If Image Media amends its complaint, the City shall respond to the amended complaint by January 31, 2018.

December 7, 2017

_____
United States District Judge